IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

```
MICHAEL MCCOMB, as parent and      )
special administrator of the       )
Estate of Giselle McComb,          )
deceased,            ,             )
                                   )
                Plaintiff,         )
                                   )
        v.                         )     No. 12 C 5680
                                   )
NATIONAL CASUALTY COMPANY, JOSE    )
BUGARIN, and BUGARIN TRUCKING,     )
INC.,                              )
                                   )
                Defendants.        )
```

**MEMORANDUM OPINION**

Before the court are the parties' cross-motions for summary judgment. For the reasons explained below, we grant defendant National Casualty Company's ("NCC") motion and deny plaintiff Michael McComb's motion.

**BACKGROUND**

This is an insurance coverage dispute regarding NCC's obligation to insure Jose Bugarin and Bugarin Trucking, Inc. (collectively "Bugarin" unless otherwise noted). In May 2010, J. L. Shandy Transportation, Inc. ("J.L. Shandy") leased a tractor and trailer from Bugarin Trucking. (Joint Stip. Facts ¶ 4.) On December 28, 2010, Jose Bugarin was driving the tractor-trailer when it collided with a vehicle driven by Giselle McComb. (Id. at

¶ 5.)[1] McComb died as a result of the accident. (Id. at ¶ 8.) Michael McComb, as the special administrator of the decedent's estate, has filed a wrongful death action in this district against Bugarin, J.L. Shandy, and others. (See Compl., Michael McComb v. Jose Bugarin et al., Case No. 1:11-CV-00256 (N.D. Ill.), attached as Ex. B to Joint Stip. Facts, ¶¶ 11-12.) At the time of the accident, J.L. Shandy was insured by an insurance policy issued by NCC. (See Joint Stip. ¶ 1; see also Policy No. OTO002356, attached as Ex. A to Joint Stip. Facts (the "NCC Policy").) Bugarin and Bugarin Trucking did not maintain their own insurance. (See Joint Stip. Facts ¶ 7.)

McComb has filed this suit seeking a declaration that: (1) the NCC Policy "affords coverage to Bugarin" for the underlying action (Count I); and (2) the policy's "MCS-90 Endorsement" applies to the underlying action (Count II). (See Compl. ¶¶ 8, 14-15.)

## DISCUSSION

### A. The Declaration That McComb Seeks in Count I is Moot

NCC has been defending Bugarin in the underlying action pursuant to the NCC Policy. (Joint Stip. Facts ¶ 10.) In its motion for summary judgment, NCC concedes that the policy covers Bugarin. (See NCC Mem. at 3-5; see also NCC Policy at 13, 20, 22.) Indeed, NCC contends — without contradiction by McComb — that it

---

[1] Although not discussed in the parties' stipulated facts, NCC appears to concede that Bugarin was working for J.L. Shandy at the time of the accident. (See NCC Mem. at 4.)

has never disputed coverage. (See NCC Mem. at 5.) McComb has not stated any objections to the scope of NCC's concession or otherwise objected to NCC's motion to dismiss Count I. So, Count I is dismissed as moot.

**B. Whether Count II is Ripe**

There has been no judgment in the underlying lawsuit, which raises the question whether McComb's claim regarding the MCS-90 Endorsement is ripe. The general rule is that it is premature to enter a declaratory judgment regarding indemnification before the insured is found liable in the underlying suit. See, e.g., Medical Assur. Co., Inc. v. Hellman, 610 F.3d 371, 375 (7th Cir.2010) (a claim for declaratory relief regarding indemnification is not ripe "until liability has been established"). This rule is based upon the practical recognition that judicial resources spent resolving indemnification may be wasted if the insured ultimately prevails in the underlying suit. Lear Corp. v. Johnson Electric Holdings Ltd., 353 F.3d 580, 583 (7th Cir. 2003) ("A declaration that A must indemnify B if X comes to pass has an advisory quality; and if the decision would not strictly be an advisory opinion (anathema under Article III) it could be a mistake, because it would consume judicial time in order to produce a decision that may turn out to be irrelevant."). A court will sometimes proceed to rule on indemnification when it has already spent time and effort adjudicating the insurer's duty to defend. See, e.g., Hess v.

Travelers Cas. and Sur. Co. of America, No. 11 C 1310, 2013 WL 623981, *6 (N.D. Ill. Feb. 20, 2013) (Grady, J.). That is not our case: NCC agrees that it must defend Bugarin. (See infra.) On the other hand, this case has been pending on our docket for more than a year and the parties have briefed cross-motions for summary judgment based almost entirely on the scope of NCC's duty to indemnify Bugarin. The parties have spent significant resources litigating this discrete legal issue, and we anticipate that a ruling will have a real and immediate impact on the parties' settlement posture in the underlying suit. Under the circumstances, we think it is appropriate to resolve the question of indemnification at this time.

**C.   The MCS-90 Endorsement**

The Motor Carrier Act of 1980 ("MCA") provides that commercial motor carriers must be "willing and able to comply with minimum financial responsibility requirements established by the Secretary . . . ."  49 U.S.C. § 13902(a)(1)(A)(vi). Motor carriers transporting non-hazardous property must demonstrate financial responsibility of at least $750,000. See 49 CFR § 387.9; see also 49 U.S.C. § 31139(b)(2). They can demonstrate the required level of financial responsibility in one of three ways: (1) an MCS-90 Endorsement; (2) a surety bond; or (3) self-insurance with the Federal Motor Carrier Safety Administration's ("FMCSA") authorization. See 49 C.F.R. § 387(d)(1)-(3). J.L. Shandy has

elected to obtain an MCS-90 Endorsement, which is attached to the NCC Policy.  The Endorsement states in pertinent part:

> ENDORSEMENTS FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980
>
> * * *
>
> The policy to which this endorsement is attached provides primary or excess insurance, as indicated by "X", for the limits shown:
>
> X This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.
>
> * * *
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the Insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the Insured or elsewhere. . . .

(NCC Policy at 44); see also 49 C.F.R. § 387.15 (prescribing the necessary language).  A majority of courts interpreting the MCS-90 Endorsement have held that the Endorsement only applies where: "(1) the underlying insurance policy to which the endorsement is attached does not provide coverage for the motor carrier's accident, *and* (2) the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels

of financial responsibility or is non-existent." Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 871 (10th Cir. 2009) (emphasis in original); see also Canal Ins. Co. v. Carolina Cas. Ins. Co., 59 F.3d 281, 283 (1st Cir. 1995) (the endorsement "simply covers the public when other coverage is lacking"). So, for example, if a motor carrier's insurance policy did not cover an accident involving a leased vehicle, then the endorsement would require the insurer to pay a final judgment against the insured. See Yeates, 584 F.3d at 884-85, n.11. The insurer would have the right to repayment, but the insurer (not the injured party) would bear the risk that the motor carrier could not pay. See id. at 885 (the endorsement "merely shifts the risk of non-payment from the injured party to the MCS-90 insurer"). But if there is coverage under the policy, and the coverage meets or exceeds the minimum financial-responsibility requirement, then the endorsement does not apply. See id. Although it appears that our Court of Appeals has not squarely addressed the issue, it has cited Yeates with approval. See Auto-Owners Ins. Co. v. Munroe, 614 F.3d 322, 327 (7th Cir. 2010) (describing the nature of the insurer's obligation under the endorsement, citing Yeates).

NCC argues that the MCS-90 Endorsement does not apply in this case because (1) the policy does cover the accident (see infra), and (2) the policy limit of that coverage ($1 million) exceeds the federally-mandated minimum. (See NCC Mem. at 5-10.) Moreover, by

the policy's express terms, the $1 million limit applies to liability stemming from a single accident no matter how many insureds are involved. (See NCC Policy at 25 ("Regardless of the number of covered 'autos', 'insureds', premiums paid, claims made or vehicles involved in the 'accident', the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations.").) This is a straightforward application of the majority rule. McComb argues, however, that the MCS-90 Endorsement creates a separate and independent duty to indemnify Bugarin, even if that means that NCC's total liability for its insureds exceeds the $1 million policy limit. (See Pl.'s Resp. at 3.)

McComb bases his argument primarily on the Tenth Circuit's unpublished decision in Herrod v. Wilshire Ins. Co., No. 11-4029, 499 Fed. Appx. 753 (10th Cir. Oct. 11, 2012). In Herrod, Espenschied Transport leased a trailer from DATS Trucking, Inc. Id. at 756. The trailer was involved in an accident killing motorist Kimball Herrod. Id. At the time, Espenschied was insured by Wilshire Insurance Company pursuant to a commercial vehicle liability policy containing an MCS-90 Endorsement. Id. The decedent's estate later settled its lawsuit against Espenschied and DATS, with DATS's insurers agreeing to pay the estate approximately $2.3 million. Id. For its part, Espenschied executed a confession

judgment for approximately $1.3 million.  Id.  When the plaintiff presented the judgment to Wilshire and demanded payment, Wilshire refused, arguing that the plaintiff had received compensation from DATS exceeding the MCA's minimum requirements.  Id. at 757.  The Herrod court concluded that the MCS-90 endorsement required Wilshire to pay the judgment entered against its insured, even if the plaintiff had already received compensation from DATS's insurer.  Id. at 757-58 ("Neither the text of the statute nor that of the regulations indicates or implies that an MCS-90 insurer may avoid paying a negligence judgment against its insured on the basis that the injured party has received compensation from another motor carrier's insurer in settlement of claims against that carrier."). McComb argues that if Bugarin had obtained an MCS-90 endorsement in its own name, then the total amount available to cover McComb's damages would exceed $1 million.  (See Pl.'s Resp. at 2 ("[H]ad both Shandy and Bugarin obtained the requisite minimum amount of insurance coverage, there would have been at least $1.5M in insurance coverage available to McComb rather than only $1M.").)[2] So, according to McComb, the policy underlying the MCA dictates that NCC should be liable to pay a final judgment as though there were two endorsements.  (Id. at 3-4.)

We reject McComb's argument for two independent reasons.

---

[2]  McComb presumes that Bugarin is subject to the MCA's financial responsibility requirements, but concedes that there is no evidence in the record establishing that fact. (See Pl.'s Resp. at 2-3.)  The parties disagree about whose burden it was to present such evidence. (See NCC Resp. at 4-6.)  For the reasons we are about to explain, we find it unnecessary to reach that issue.

*First*, we agree with NCC that the Endorsement only applies to a final judgment against the *named insured* (J.L. Shandy). The term "insured" in the MCS-90 Endorsement is defined as "the motor carrier *named* in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.5 (emphasis added). There is some support in the case law for McComb's position that the Endorsement applies more broadly. See John Deere Ins. Co. v. Nueva, 229 F.3d 853, 859-60 (9th Cir. 2000); see also Adams v. Royal Indem. Co., 99 F.3d 964, 970-71 (10th Cir. 1999). But since John Deere and Adams were decided, the FMCSA has clarified that the endorsement only applies to the named insured:

> Question: Does the term "insured," as used on Form MCS-90, Endorsement for Motor Carrier Policies of Insurance for Public Liability, or "Principal", as used on Form MCS-82, Motor Carrier Liability Surety Bond, mean the motor carrier named in the endorsement or surety bond?
>
> Guidance: Yes. Under 49 CFR 387.5, "insured and principal" is defined as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." Form MCS-90 and Form MCS- 82 are not intended, and do not purport, to require a motor carrier's insurer or surety to satisfy a judgment against any party other than the carrier named in the endorsement or surety bond or its fiduciary.

FMCSA Regulatory Guidance, 70 Fed. Reg. 58065, 58066 (Oct. 5, 2005). Courts interpreting the endorsement in light of this guidance have held that the endorsement only applies to the named insured. See Ooida Risk Retention Group, Inc. v. Williams, 579

F.3d 469, 477 (5th Cir. 2009); Sentry Select Ins. Co. v. Thompson, 665 F.Supp.2d 561, 565-69 (E.D. Va. 2009); Armstrong v. U.S. Fire Ins. Co., 606 F.Supp.2d 794, 825-26 (E.D. Tenn. 2009); see also Illinois Nat. Ins. Co. v. Temian, 779 F.Supp.2d 921, 927 (N.D. Ind. 2011) ("Courts addressing the meaning of 'insured' in the MCS-90 endorsement since the FMCSA guidance have consistently held that the endorsement's coverage does not extend beyond the named insured."). We believe that these authorities are persuasive. McComb has not suggested that the FMCSA exceeded its authority when it adopted § 387.5, and its guidance is consistent with the regulation's plain language. See Forkwar v. Progressive Northern Ins. Co., Inc., 910 F.Supp.2d 815, 826 (D.Md. 2012) (concluding that the FSCSA's guidance is consistent with the regulation's language and "entitled to respect"). Moreover, we agree with the courts that have held that the different methods of evidencing financial responsibility should be interpreted consistently. The form applicable to the surety-bond alternative (Form MCS-82) is a free-standing agreement applicable to the "Motor Carrier Principal" only. See 49 CFR § 387.15. If J.L. Shandy had elected to obtain such a bond in lieu of the Endorsement, it plainly would not apply to third parties like Bugarin. It would be strange, then, to interpret the regulations to impose varying degrees of financial responsibility depending on the form of proof the motor carrier elected to obtain. See Sentry Select, 665 F.Supp.2d at 568 ("Here,

because the MCS-90 was promulgated for precisely the same purpose as a surety bond or self-insurance, it would make no sense to reach a different result based on how Milligan chose to discharge his federally mandated financial responsibility duties."); see also Temain, 779 F.Supp.2d at 928 (similar).

*Second*, we do not believe that Herrod's reasoning supports extending its holding to apply to this case. By its terms, the MCS-90 endorsement applied to the unpaid judgment against Wilshire's insured. Nevertheless, Wilshire argued that it was not required to pay the judgment because the plaintiff in the underlying case had already received compensation exceeding the MCA's minimum threshold from another insurer. As the Herrod court pointed out, there is no basis for such an exception in the regulations or the endorsement itself. By contrast, NCC is not attempting to avoid its obligation to cover its named insured (or Bugarin, for that matter). It is only attempting to limit its liability exposure consistent with the policy's express terms. See Auto-Owners, 614 F.3d at 327 ("[T]he MCS-90 does not modify the terms of the policy, but instead obliges the insurer to pay up to $750,000 of a final judgment regardless of the terms of the policy."). The endorsement is intended to protect the public. At the same time, the MCA does not make insurers strictly liable for any and all damages arising from accidents involving insured motor carriers. Cf. Carolina Causalty, 584 F.3d at 888 ("[W]e are

unwilling to read the Motor Carrier Act and the FMCSA regulations as requiring Carolina Casualty to bear responsibility it did not anticipate or otherwise bargain for once the public policy purposes of the regulations have been satisfied."); Kline v. Gulf Ins. Co., 466 F.3d 450, 456 (6th Cir. 2006) ("The federal government balanced the need to compensate victims with the needs of industry and determined the appropriate minimum compensation for members of the public.").

In sum, we hold that the MCS-90 Endorsement does not apply to the underlying lawsuit and does not require NCC to pay damages in excess of the $1 million policy limit.

## CONCLUSION

The plaintiff's motion for summary judgment [18] is denied. The defendants' motion for summary judgment [19] is granted.

DATE:      October 31, 2013

ENTER:     _____
           John F. Grady, United States District Judge